547 A.2d 1201

COMMONWEALTH of Pennsylvania, Appellee,

v.

Lawrence FANELLI, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 9, 1987.

Filed Sept. 15, 1988.

Jules Epstein, Assistant Public Defender, Philadelphia, for appellant.

Deborah Fleisher, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and CAVANAUGH, ROWLEY, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence (1–2 years imprisonment) for corrupting a minor by the appellant, Lawrence Fanelli. We affirm.

The facts, viewed in a light most favorable to the verdict-winner, reveal that the child-victim (who was 6 years old at the time of the October, 1984 trial) was living with her mother and younger sister (Tina) at a Philadelphia address at the time in question. The appellant was the mother's boyfriend, resided with the family and was referred to by the children as "Daddy".

Sometime between September 29, 1981 and September 29, 1983, the victim testified that, with her mother and sister away, she was sexually assaulted by the appellant. She described it this way: She was lying on her back, the appellant's face was even with hers and their stomachs touched. The next thing she recalled was feeling a pain in her vaginal area. This caused her to cry and to ask the appellant to stop. He failed to do so, kissed her lips and threatened to "beat" her if she told anyone what occurred.

Nonetheless, albeit "afraid", the victim told the mother what transpired on her arrival home.

The foster mother, who obtained custody of the child beginning in September of 1983, related how the child's remarks about being "massaged" by the appellant, and the drawing of a male's penis, caused her to become "very upset". She spoke to her supervisor and was told to have the child checked at the hospital. She did so on October 7, 1983.

The attending pediatrician remembered conducting a pelvic examination of the victim. He found that the hymen was not intact and the vaginal orifice was large—three centimeters as compared to one centimeter. These two facts, opined the doctor, would be consistent with penetration or trauma of the child's vagina, i.e., the application of abnormal force to that area.

The pediatrician also remarked that, even though there were no signs of trauma, bleeding or bruising to that area, "[t]he majority of cases in this age group [4–5 years] don't show evidence of trauma to the vaginal area. It can be a normal examination." This, according to the doctor, is consistent with "the experience of pediatricians throughout the years that you will not find signs of trauma."

On cross-examination, the doctor did admit that a broken hymen can result from certain activity on the part of the child. However, he cautioned that such a condition could not come about because of a fall or doing acrobatics, unless one is doing "abnormal" gymnastics. This holds true, in the words of the doctor, with the absence of bruising and bleeding in sexual abuse cases, i.e., you may "not necessarily" find those signs.

With the hospital examination, the police were called and, upon interviewing the victim, were told that her vaginal area had been hurt by the appellant. Further, she told the police that the appellant had threatened to "beat her up" if she mentioned the assault to others. Thereafter, the appellant was arrested and charged with rape, statutory rape, indecent assault, indecent exposure and simple assault.

Following a non-jury trial, the appellant was convicted of all charges, except for rape and statutory rape. At the time set for sentencing, a term of incarceration was imposed for indecent assault only, it being the ruling of the court below that the other offenses merged for sentencing purposes. This appeal followed.

Of the four issues raised for our consideration, we would defer to and adopt the trial court's opinion in disposing of issues one and four. The former challenges the child's competency to testify while the latter questions the due diligence of the Commonwealth in prosecuting the accused under Pa.R.Crim.P. 1100. No assault is made on the sufficiency of the evidence.

Issues two and three are read by this Court to present the same issue, i.e., did the Commonwealth establish with reasonable certainty that the assault of the child-victim occurred within the applicable statute of limitations so as to afford the appellant due process?

This claim, raised below, is the equivalent of a motion in arrest of judgment since it seeks the appellant's discharge, rather than a remand for a new trial. 10A P.L.E. Criminal Law § 802. In this context, the Supreme Court of Pennsylvania has indicated that a review of the *entire* record is to occur, and this is to include all evidence "presented at trial, whether or not such evidence was properly admitted." *Commonwealth v. Ward*, 235 Pa.Super. 550, 557, 344 A.2d 650, 653 (1975) (Citation omitted). Accord *Commonwealth v. Cohen*, 489 Pa. 167, 177, 413 A.2d 1066, 1072 (1980), cert. denied, 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980).

We make mention of this because we believe an erroneous ruling occurred when the court below excluded relevant, competent and material evidence (relating to the time-frame in which the assault took place) by sustaining defense counsel's objection, on hearsay grounds, to the police officer's testimony that she was told by the child-victim that the assault "happened right before she went to stay at mom Mary", i.e., the foster parent that began to take care of the child in September of 1983.

Historically, the reasons for the exclusion of hearsay evidence from trial are three-fold. First, the out-of-court declarant commonly speaks or writes without the solemnity of the oath administered to witnesses in a court of law. Second, the out-of-court declarant's absence from trial denies the trier-of-fact the opportunity to observe his/her demeanor, which would reflect on his/her credibility if a witness on the stand. Lastly, considered by most scholars to be the main justification for the exclusion of hearsay, is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is reported by the in-court witness. See McCormick on Evidence § 245 (3rd ed. 1984).

Save for the first criterion cited supra, the trier-of-fact was afforded the occasion to see the declarant at trial and, more importantly, the accused was availed the opportunity to question the declarant/victim. Thus, the prejudices sought to be avoided with the implementation of the hearsay rule were obviated. See *Commonwealth v. Rounds*, 356 Pa.Super. 317, 320–21, 514 A.2d 630, 632 (1986), rev'd on other grounds, 518 Pa. 204, 542 A.2d 997 (1988) and compare with *Commonwealth v. Maybee*, 429 Pa. 222, 226, 239 A.2d 332, 335 (1968). Thus, the officer's testimony being, in actuality, admissible, it was for the trier-of-fact to attach what weight it deemed proper under the circumstances. We raise this matter in the hope that in the future similar exclusions of proper evidence do not occur and deprive the jurist or veniremen of the right to hear *all* evidence admissible in the rendition of a verdict.

■ Despite the trial court's evidentiary ruling excluding the officer's testimony, we find that the result reached was a proper one and is consistent with and supported by established case law in this Commonwealth. To explicate, in this jurisdiction the prosecution must establish the date of the alleged offense with "reasonable certainty" to withstand a demurrer or a motion in arrest of judgment. See *Commonwealth v. Devlin*, 460 Pa. 508, 333 A.2d 888 (1975).

We consider *Devlin* to be the polestar in our assessment of whether the appellant's due process argument is to give way in favor of the child-victim's right to have her assault brought to justice. In *Devlin*, our Supreme Court opted for a balancing approach to resolve conflicting interests of the accused vis-a-vis the victim when it came to the specificity required to be proven as to the time-frame of the alleged crime. It wrote:

> "Here, as elsewhere, 'The pattern of due process is picked out in the facts and circumstances of each case.' " *Hoag v. New Jersey*, 356 U.S. 464, 468, 78 S.Ct. 829, 833, 2 L.Ed.2d 913 (1958), citing *Brock v. North Carolina*, 344 U.S. 424, 427–28, 73 S.Ct. 349 [350–51], 97 L.Ed. 456 (1953); *United States ex rel. Drew v. Myers*, 327 F.2d 174 (3d Cir.1964). Due process is not reducible to a mathematical formula. *Gibbs v. Burke*, 337 U.S. 773, 781, 69 S.Ct. 1247 [1251] 93 L.Ed. 1686 (1949). Therefore, we cannot enunciate the exact degree of specificity in the proof of the date of a crime which will be required or the amount of latitude which will be acceptable. Certainly the Commonwealth need not always prove a single specific date of the crime. *Cf. Commonwealth v. Morrison, supra; Commonwealth v. Mourar, supra.* Any leeway permissible would vary with the nature of the crime and the age and condition of the victim balanced against the rights of the accused.

460 Pa. at 515–16, 333 A.2d at 892 (Footnote omitted).

In *Devlin*, the Court found that a 14–month span within which the offense charged (sodomy of a 22–year–old retarded man who had the mental ability of a first or second grade child and the emotional stability of an even younger child) might have taken place was an egregious encroachment on the defendant's ability to defend himself. As a result, the judgment of sentence was reversed and the defendant was discharged.

■ From our analysis of the facts presented, considering the interests of the accused and the victim, the balance tips in favor of the Commonwealth. While there was some

confusion on the part of the child-victim concerning the date of the assault, we view the evidence to have been sufficient to withstand a due process argument.

Instantly, we have the testimony of the victim recalling that when she was assaulted her sister (Tina) was 1 year old—at the commencement of the October, 1984 trial the sister was 3. The victim indicated further that she was living with her mother, sister and the appellant during the incident. Likewise, the police officer who questioned the child remembers being shown the residence of the foster parent by the child. The Philadelphia address where the child stayed with her family before being removed from her mother's custody, and the only other premises denoted as the child's living quarters, was also designated to the police.

The victim, who was 4 or 5 years of age when attacked, was the object of abuse by a loco parentis. Indeed, the child was threatened with harm by her assailant to refrain from complaining, but even when the child vocalized her concerns to her mother she was not the impetus leading to an examination and the lodging of a complaint. Rather, it took a third party/foster parent to initiate medical inquiry that led to the appellant's arrest.[1]

Given the child's age, threatened harm and apparent lack of support from her family, we will not turn our backs on the pleas of this child-victim to acknowledge her complaints and reprimand those at fault.

The views expressed by some of our sister states in this burgeoning area of the law, as of late, are encouraging and

1. There may be reason to believe, albeit we offer no ruling on the matter since it is not before the Court, that the victim's mother not testifying at trial to buttress her child's prompt complaint may in some way be the outgrowth of her involvement with the appellant, either as his paramour or common law spouse. Also, the fact that the child was removed to a foster home does not reflect positively on the home environment in which the child was being raised.

We make mention of this potential scenario in answer to the Commonwealth's inability to have fixed the time of the incident by evidence other than by the testimony of the victim. See Dissenting Opinion of Judge Spaeth in *Commonwealth v. Devlin*, 225 Pa.Super. 138, 141, 310 A.2d 310, 312 (1973), rev'd 460 Pa. 508, 333 A.2d 888 (1975).

instructive. For instance, in *State v. Berry*, 101 Ariz. 310, 419 P.2d 337, 341 (1966), wherein a 6–year–old victim of child molestation was unable to testify regarding the exact dates of the assault, the court stated:

> The fact that the victim seemed somewhat unsure of the time of the assault might be considered by the jury as going to the credibility of her testimony, but we find that it is insufficient grounds for declaring a fatal variance. The questions were posed at trial four months after the crime to a six-year-old girl that testified that she was not able to determine time on a clock nor dates on a calendar. That a jury might not pay much heed to counsel's vigorous attempts to extract an inconsistency in the witnesses' testimony by the use of such calendar dates with which she admittedly had no working knowledge does not seem unreasonable. If we were to find a fatal variance under such circumstances it would seem to behoove one who chooses to sexually assault children at the risk of irreparable psychological and physical damage to his victim, to make sure that the child is sufficiently young to be incapable of effectively testifying as to specific dates in the year and minutes on the clock. We recognize, rather, that it is for the jury to determine the trust of the witnesses' story, and that it is not the function of this court to retry that issue.

Similarly, the Indiana Supreme Court in *Tapp v. State*, 256 Ind. 422, 269 N.E.2d 367, 369 (1971) evaluated the sexual assault of an 11–year–old girl by the accused. The accused asserted on review that no proof was submitted at trial relating to the date of the offense. In responding, the court held:

> Although the precise date of the offense was not determined, it is clear that it occurred in mid-summer 1968. Time in no way being of the essence of the offense, there being no claim or indication that the defendant was in anyway misled or prejudiced ... and it clearly appearing that the offense took place in the period of the statute of

limitations, defendant's position on this point is without merit.

Lastly, we note the remarks of the Montana Supreme Court in a case in which the defendant contended that his right to an affirmative defense was precluded because there was a 10–month span to consider. It disagreed and responded:

In this case of incest, a four-year-old child was the victim. The prosecutor was handicapped from the outset of the case in obtaining specific information about the offense. We should recognize that children, particularly four-year olds are not governed by the clock and calendar as adults are. They are generally at a loss to apply times or dates to significant events in their lives. "Children are less likely to distinguish dates and time with specificity." *State v. Clark*, 682 P.2d at 1344. The fact that the victim cannot set a date for the crime should not be fatal to the State's case, thus making the defendant virtually immune from prosecution.

*State v. D.B.S.*, 700 P.2d 630, 634 (Mont.1985).

The cases we have perused are consistent in their treatment of a child-victim's testimony (the level of specificity necessary) to establish the time-sequence of the crime charged, i.e., "reasonable certainty" allowing the accused to offer a defense if he so chooses.

We have scrutinized the evidence provided in light of the tender years of the victim. Her hesitancy in itemizing *exactly* when, where and how the abuse took place is understandable given her youth and the frailties which plague us all when it comes to recreating a distasteful event we would rather forget than relive.[2]

If we were to hold that the appellant is entitled to be discharged because the period encompassing the time-frame for the assault exceeded a 14–month span (the time found to be offensive in *Devlin*), then we would be, in essence, ignoring the balancing test proclaimed by our Supreme

2. See *Commonwealth v. Niemetz*, (CC 7706381, Alleg. Cty. 2/1/78) (Popovich, J.) (unreported opinion), aff'd 282 Pa.Super. 431, 422 A.2d 1369 (1980).

Court in *Devlin* and resorting to a practice of merely watching the calendar.

Justice, in our opinion, is not reducible to such a simple, temporal formula. On the contrary, as exemplified by the scales of justice, one must engage in a weighing of competing interests. On the one hand we have the rights of the accused and the panoply of protections that have evolved through interpretation of our federal and state constitutions and statutes, to which all have to be adhered before one's liberty and freedoms can be restricted or revoked. On the other side, we have the need of society to see the guilty punished and the victim's desire not to be alienated, or the object of judicial blood-letting to rid the system of its short-comings, in the process. It is, admittedly, a delicate balance which needs to be maintained without undermining either side in the attempt.

We have done so with our conclusion that the victim's minority (and the obvious effects it has on recall) should not be used as a sword by the appellant in avoiding the criminality of his behavior. We find the recollection of the 6–year–old victim to be sufficient enough to prove with reasonable clarity that she had been assaulted by the appellant within a period encompassed by the applicable statute of limitations. The appellant's retort that his due process rights have been violated because the date of the assault was not proven with specificity works equally in his favor since it would reflect on the credibility of the victim and her ability to recall the events surrounding the sordid affair. In other words, the appellant had the opportunity to refute the allegations of the victim. On the other hand, the victim, given her tender age, recalled the events with sufficient clarity to establish their commission and the perpetrator. We see no reason to give the guilty party an access route from under his conviction.

It must be remembered that the victim stated her sister was 1 year old at the time of the assault, and with this same sister's age being fixed at 3 years of age at the time of trial, we find that to extrapolate from the preceding that

the offense charged occurred within 2 years of the filing of the complaint is eminently *reasonable*, taking into consideration the tender age of the child-victim.

Any doubt that might arise regarding the statute of limitations would relate to the lack of *specificity* in fixing the exact time at which the assault occurred. However, the law does not require exactitude on the level of laser precision in setting a date for a crime. One need only establish with "reasonable certainty" that the crime charged was brought within the statutory period. See *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 422 A.2d 1369 (1980).

We offer that all the possible combinations one may conjure up when attempting to set the period in which the assault transpired, given the 2–year time span between the victim's sister's age at the time of the incident and the trial date, may just as *reasonably* be viewed to encompass the legitimate period in which the charge could be timely brought against the appellant.

This case, like most sexual assault scenarios, took place in the presence of only the appellant and the victim. Thus, the credibility of the parties involved is for the trier-of-fact to weigh. In deference to the trial court, our role is to answer questions of law, which, instantly, is one of first impression.

As laudatory as one's concern for the interests of the appellant's right to be tried timely may be, we find that it is overshadowed by the obligation of this tribunal to administer justice even-handedly, i.e., with equal concern for the rights of the victim and the integrity of the criminal system.

In carrying out our role as an appellate court, we have applied the law to the facts and conclude that the verdict and sentence will stand.

Judgment of sentence affirmed.

BECK, J., files a concurring opinion.

CAVANAUGH, J., files a dissenting opinion, in which WIEAND, J. and McEWEN, J. join.

BECK, Judge, concurring:

I concur in the result reached by the majority. This case presents two significant issues for review. First, did the Commonwealth establish that appellant's offenses were committed within the statute of limitations period? Second, did the Commonwealth deny the appellant due process of law by failing to fix the date of the offense with reasonable certainty (the *Devlin* issue)? *Commonwealth v. Devlin*, 460 Pa. 508, 333 A.2d 888 (1975).

The case sub judice raises these two questions as distinct issues. The majority's discussion merges the two independent issues and errs in not considering them separately. In its discussion, the majority asserts that the Commonwealth must prove with "reasonable certainty" that appellant's prosecution was not barred by the statute of limitations. At 565. The majority takes the reasonable certainty standard applicable to the *Devlin* issue and applies it in the statute of limitations context.

The question must then be addressed as to what the majority means by "reasonable certainty" in the context of the statute of limitations. From the majority's opinion, the meaning of "reasonable certainty" is unclear. Must the Commonwealth prove that the prosecution was initiated within the statutory period by a preponderance of the evidence, by clear and convincing evidence, or beyond a reasonable doubt? A careful examination of the Pennsylvania Crimes Code indicates that the Commonwealth must prove beyond a reasonable doubt that a prosecution is not time barred. *See Commonwealth v. Thek*, 546 A.2d 83, 90 (1988); *Commonwealth ex. rel. Atkins v. Singleton*, 282 Pa.Super. 390, 394, n. 2, 422 A.2d 1347, 1349 n. 2 (1980).

The Commonwealth's burden of proof must be determined with reference to section 103 of the Crimes Code. Section 103 contains the following definition.

"Element of an offense." Such conduct or such attendant circumstances or such a result of conduct as:

(1) is included in the description of the forbidden conduct in the definition of the offense;

(2) establishes the required kind of culpability;

(3) negatives an excuse or justification for such conduct;

(4) *negatives a defense under the statute of limitations;* or

(5) establishes jurisdiction or venue.

18 Pa.Cons.Stat.Ann. § 103 (Purdon 1983) (emphasis added).

Under section 103, when the defendant interposes the statute of limitations as a defense, the Commonwealth is obliged to prove the "attendant circumstances" that "negative" the statute of limitations defense, i.e., the Commonwealth must establish as an element of the offense that the crime was committed within the statute of limitations period. The burden imposed upon the Commonwealth is proof beyond a reasonable doubt. The federal constitution mandates that each and every element of the crime must be proved by the prosecution beyond a reasonable doubt. *See Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1979); *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

By choosing to designate the statute of limitations as an element of the offense, the Pennsylvania Legislature adopted the position advocated by the Model Penal Code. The Commentary to the Model Penal Code provides:

> Much as there is to say for a distinction between facts that establish the criminality of the defendant's conduct and those that merely satisfy procedural requirements, with a heavier burden for the former than the latter, there is grave danger of confusion in presenting to a jury different standards for appraising different features of the prosecution's case.

Model Penal Code and Commentaries § 1.12 commentary at 189 (Official Draft and Revised Comments 1985). I appreciate the concerns which motivated the framers of the Model Penal Code. However, I am not persuaded that a jury would be incapable of following an instruction that: 1) the Commonwealth must prove the defendant guilty beyond a

reasonable doubt, and 2) the Commonwealth need only prove that it is more likely than not that the offense was committed within the statute of limitations period.

Unless the Pennsylvania legislature narrows the definition of "element of the offense" to exclude the statute of limitations, the burden on the prosecutor remains beyond a reasonable doubt.

After reviewing the record, I conclude that the Commonwealth proved beyond a reasonable doubt that appellant's offenses were committed within two years of the date when criminal charges were initiated. The majority relies heavily on the fact that the child victim testified that her sister was one year old at the time of the offense and three years old at the time of trial. Standing alone, this evidence would not be sufficient to prove beyond a reasonable doubt that the prosecution was initiated within the statute of limitations. As Judge Cavanaugh demonstrates in his dissenting opinion, the child's testimony was too vague and ambiguous to prove the necessary facts beyond a reasonable doubt. *See* op. at 575–579 (Cavanaugh, J., dissenting).

However, I agree with the majority that the reviewing court must review all of the evidence adduced at trial, including, in the case sub judice, evidence of the police officer which was subject to an objection that was erroneously sustained by the trial court. As the majority correctly notes, the trial court improperly excluded as hearsay the testimony of the police officer that the victim stated that she was sexually assaulted by the appellant right before she went to live with her foster mother in September, 1983. *See Commonwealth v. Rounds*, 356 Pa.Super. 317, 514 A.2d 630 (1986), *rev'd on other grounds*, 518 Pa. 204, 542 A.2d 997 (1988). Considering the police officer's testimony as well as the victim's testimony, I conclude, the Commonwealth satisfied its burden beyond a reasonable doubt.

As for the *Devlin* issue, the testimony of the police officer, clearly demonstrates that the Commonwealth has fixed the date of the offense with reasonable certainty.

I concur in the majority's determination that the judgment of sentence must be affirmed.

CAVANAUGH, Judge, dissenting:

Appellant Lawrence Fanelli was convicted of various misdemeanors[1] associated with a sexual attack upon the minor daughter of the woman with whom appellant was living. Appellant was found not guilty of charges of rape and statutory rape. On appeal appellant challenges various of the trial court's rulings, including its finding that the Commonwealth sustained its burden of showing the date on which the offense occurred. Because I find that the Commonwealth did not prove beyond a reasonable doubt that the offense occurred within the period of the statute of limitations and did not fix the date of the offense with reasonable certainty, I would reverse the judgment of sentence.

Appellant was originally charged with corrupting the morals of a minor, indecent assault, and indecent exposure on October 9, 1983. These charges were later consolidated with charges of rape, statutory rape, and simple assault. The amended bills of information allege the crimes occurred between September 29, 1981 and September 29, 1983. Trial testimony established that only a single act occurred. At trial it was the Commonwealth's burden to prove beyond a reasonable doubt that this offense occurred within the requisite time period. This the Commonwealth failed to do. The appellant also had a due process right to be apprised of the date of the offense with reasonable certainty. This right was violated.

The Commonwealth offered the testimony of four witnesses: the complainant, who was six years old at the time of trial; Harry A. Lehman, III, M.D., an expert who examined the complainant; Mary Breton, in whose care complainant was placed after September 29, 1983; and Earline Hammett–Mitchell, a police officer. Only the testimony of

---

1. Indecent exposure, indecent assault, simple assault, and corrupting the morals of a minor.

the complainant touched upon the time period within which the offense occurred. The other witnesses relied upon information supplied by the complainant in formulating their impressions regarding the date of the offense. In looking at the evidence of record the majority errs in considering, *sua sponte*, the purported error of the trial court in excluding the hearsay testimony of Officer Hammett–Mitchell. Such consideration transgresses a fundamental tenet of criminal jurisprudence—that there is no avenue of appeal by the Commonwealth for trial errors committed by the court below (except within limited circumstances not here applicable.) *See Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985). The effect of this is to allow appellate review of an evidentiary ruling which was decided contrary to the Commonwealth. Appellate review, however, is precluded by the double jeopardy clause. An issue which could not be raised by the Commonwealth should not be raised *sua sponte* by the court.[2]

The majority cites *Commonwealth v. Ward*, 235 Pa.Super. 550, 344 A.2d 650 (1975), a criminal case in which it was held that certain evidence was improperly *admitted* at trial. This court held that under the circumstances we look at the whole record to determine whether a motion in arrest of judgment was properly granted. We held that the proper remedy was the granting of a new trial. *That is* if looking at all the evidence admitted at trial it would withstand judgment n.o.v. regardless of improper admission of *some* of the evidence, the remedy is to grant a new trial (since the defect may be cured), but if looking at all the evidence

2. A recent decision by our supreme court makes clear that the sustaining of an objection to hearsay evidence results in exclusion of that evidence from the record. *Commonwealth v. Smith*, 518 Pa. 15, 39, 540 A.2d 246, 257 (1988). In *Smith*, defendant claimed error in allowing the introduction of hearsay statements. The court reasoned, "The record discloses that all but one of appellant's hearsay objections to [witness's] testimony was sustained, and no further relief was requested. The record does not support appellant's assertion, therefore, that [witness] was permitted to give hearsay evidence gathered from [appellant's sister]." *Ibid.* Therefore, there is no basis upon which to find the hearsay evidence as constituting part of the record in the instant case.

including that which was improperly admitted it is found to be insufficient as a matter of law, then the remedy is arrest of judgment since the case should never have gone to the jury in the first place.

This is simply an application of the rule that an appellate court does not "diminish the record" before reviewing the sufficiency of the evidence. See *Commonwealth v. Cohen,* 489 Pa. 167, 413 A.2d 1066 (new trial is proper remedy) and cases cited therein.[3]

Moreover, the officer's testimony was not admissible nor did it fall within an exception to the hearsay rule. The majority states that the trial judge erred in excluding the testimony of Officer Hammett–Mitchell, proffered by the Commonwealth, that the child told her that the assault "happened right before she went to stay at mom Mary." However, the trial judge rightly excluded this testimony. Further, we must disagree with the majority's admonition to trial courts to permit such evidence, presumably fashioning a rule that hearsay is admissible whenever the declarant is available to be called as a witness. For support the majority cites *Commonwealth v. Rounds,* 356 Pa.Super. 317, 514 A.2d 630 (1986), *rev'd on other grounds,* 518 Pa. 204, 542 A.2d 997 (1988). A child victim testified that he had told his brother that their father "did sex to me". The court held that there was no ineffectiveness in failing to object to this testimony since it was not objectionable hearsay. It was held not to be hearsay since the declarant was in court (and was, in fact, the witness who testified to the out-of-court statement).

However, I would rely upon *Commonwealth v. Haber,* 351 Pa.Super. 79, 505 A.2d 273 (1986) in which the court held that a child's mother could not offer testimony regarding statements made by the child relating to a sexual attack upon her since the statements were hearsay. In *Haber,* the children were witnesses at trial, but were unable to supply

3. This rule also applies to civil cases. *See McCann v. Amy Joy Donut Shops,* 325 Pa.Super. 340, 472 A.2d 1149 (1984) (Cavanaugh, J., dissenting).

certain details which were contained in the hearsay statements. The testimony was inadmissible since it did not qualify under any exception to the hearsay rule, although the declarants were present and had themselves testified.

The testimony of Officer Hammett–Mitchell is hearsay, i.e., it is an out-of-court assertion offered to prove the truth of the matter asserted. See *Kemp v. Qualls*, 326 Pa.Super. 319, 327, 473 A.2d 1369, 1373 (1984); Fed.R.Evid. 801(c); D. Binder, *Hearsay Handbook*, Ch. 1 (What Is Hearsay) (2d ed. 1983). The majority points out that the child appeared as a witness at trial and thus appellant had an opportunity to cross-examine her. While such opportunity may satisfy appellant's constitutional right to confront the witnesses against him, it does not create an exception to the hearsay rule. The fact that testimony could withstand objections under the Confrontation Clause of the Sixth Amendment (*See California v. Green* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)) does not mean that it is *ipso facto* admissible. It still may be hearsay and subject to appropriate exception. *Cf. McCormick on Evidence* § 252 (3d ed. 1984). Moreover, the confrontation clause of the Sixth Amendment applies only to criminal proceedings. Again, there is no authority that satisfaction of Sixth Amendment right to face accusers referred to in *Rounds, supra,* eliminates an otherwise valid hearsay objection. As the court cogently explained in *State v. Martin,* 356 So.2d 1370, 1374 (La.1978):

> ... the hearsay character of a proffered out-of-court assertion is not altered by the fact that the statement was made by a person who appears in court as a witness.

The gist of the hearsay objection is the repetition on the witness stand on an out-of-court assertion. It is not dependent on the identity of the witness or the fact that the declarant may be available. Thus, even if a witness testifies to an assertion previously made by him and the assertion is offered to prove the truth of the matter asserted therein, it is hearsay. *See McCormick, supra,* § 251 (Prior

Statements of Witness as Substantive Evidence); D. Binder, *supra,* § 1.01.

Although there are certain hearsay exceptions which are grounded on the fact that the witness is available to be cross-examined, *see,* e.g. *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986); Fed.R.Evid. 801(d)(1), there is no authority for the adoption of the unprecedented innovation of the majority which would hold that hearsay is admissible as substantive evidence so long as the declarant to the hearsay assertion is available for questioning in court. I would agree with the trial court that the officer's testimony was inadmissible hearsay evidence and thus would disagree with the majority, and further I would overrule the hearsay holding of *Commonwealth v. Rounds, supra.*

The direct testimony of the complainant regarding the time period in question is as follows:

Q. [By the prosecutor] Now ... when this happened with you and Larry, okay, was your sister Tina born yet?

[Objection overruled]

Q. Was your sister Tina born yet?

A. Yes.

Q. Okay, When it happened, okay, do you remember about how old Tina would have been?

A. One.

[Objection overruled]

Q. How old is Tina now?

A. Three.

The defense of a prosecution's being barred by the statute of limitations requires the Commonwealth to prove beyond a reasonable doubt that the action was timely commenced. *See* 18 Pa.C.S. § 103, conduct negating a defense under the statute of limitations is an element of an offense. The statute of limitations must be liberally construed in favor of the defendant and against the Commonwealth. *Commonwealth v. Cardonick,* 448 Pa. 322, 292 A.2d 402 (1972). The statute of limitations, which provides predicta-

ble legislatively enacted limitations on prosecutorial delay, is the primary guarantee against the bringing of overly stale criminal charges. *Commonwealth v. Arnold,* 331 Pa.Super. 345, 480 A.2d 1066 (1984). *See generally* LaFave and Israel, *2 Criminal Procedure* § 18.5 (1984) (Objectives of statute of limitations include prevention of prosecution of persons who have been law abiding for some years, avoidance of prosecution where community's retributive impulse has ceased, lessening the possibility of blackmail, and requiring prosecutions to be based upon reasonably fresh evidence.)

The application of the statute of limitations is not abrogated by the fact that a defendant is charged with a sexual offense. The standard of liberal construction in favor of defendant is uniform no matter the violation charged. The appropriate formulation of the Commonwealth's burden is as follows:

> In the prosecution of sodomy or other crimes in which a particular date or day of the week is not the essence of the offense, the Commonwealth's burden is to prove the commission of the crime upon some *date fixed with reasonable certainty and within the prescribed statutory period.*

*Commonwealth v. Yon,* 235 Pa.Super. 232, 341 A.2d 169, 171 (1975) (emphasis added).

The Commonwealth is not relieved of its burden to prove the offense occurred within the "prescribed statutory period" because the offense involved is one of sexual abuse or because the victim is a child. This is not to say that no leeway is afforded in establishing the date of the offensive conduct in a child sexual abuse prosecution. Primary among the court-created mechanisms which recognizes the difficulty in fixing the exact date on which criminal acts of child abuse have taken place is the continuous course of conduct doctrine. For purposes of ensuring the defendant's right to sufficiently specific charges so that he may adequately prepare a defense, it has been held that testimony establishing a series of acts over a period of time satisfies

defendant's due process rights. *See Commonwealth v. Niemetz,* 482 Pa.Super. 431, 422 A.2d 1369 (1980). *Accord, Commonwealth v. McClucas,* 357 Pa.Super. 449, 516 A.2d 68 (1986). *Cf. Commonwealth v. Campbell,* 342 Pa.Super. 438, 493 A.2d 101 (1985) (admission of testimony regarding a *single,* prior sexual assault upon complainant in an incest prosecution is reversible error absent a showing of a continuous course of conduct since its effect is to show bad character based upon a prior criminal act.)

As a criminal defendant, appellant has a right both to be tried within the statutorily prescribed period and to be afforded the benefit of responding to charges fixed with reasonable certainty to a specific date within that statutory period. The majority commits error where it combines appellant's due process and statute of limitations arguments, since the two are reflective of different interests of our criminal justice system. This failure to distinguish between the two concepts results in its use of an improper standard to determine whether the Commonwealth has complied with its burden of showing that the prosecution was commenced within the period of the statute of limitations. Our courts have long recognized the independent nature of each of these rights. *Commonwealth v. Devlin,* 460 Pa. 508, 333 A.2d 888 (1975); *Commonwealth v. Yon, supra; Commonwealth v. Levy,* 146 Pa.Super. 564, 23 A.2d 97 (1941). The Supreme Court in *Devlin* articulated the distinction as follows:

> Certainly, the Commonwealth has shown that the crime was committed, if at all, within the statutory period of limitations. As a general proposition of law, the evidence is sufficient to support a conviction if it tends to prove that the offense was committed prior to the commencement of the prosecution and that it was not committed at a time so remote that its prosecution is barred by the prescribed statutory period of limitations. [Citations omitted]. If the statute of limitations was our only consideration this conviction could be upheld. However, the rule announced in *Levy* contains another requirement:

the date of the commission of the offense must be "fixed with reasonable certainty." We do not feel that the Commonwealth's proof to the effect that the crime was committed on any single day within a fourteen-month period meets the "sufficient particularity" standard of Levy. To hold otherwise would violate the notions of fundamental fairness embedded in our legal process.

Our holding is required by the Fourteenth Amendment Due Process Clause of the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution, P.S.

*Commonwealth v. Devlin,* 460 Pa. at 513, 333 A.2d at 890–891.

Although appellant offered no evidence at trial, such as alibi testimony, and, arguably, was not harmed in interposing a factual defense by the shaky dating of the offense, this is not a consideration in determining whether the evidence sufficiently established that appellant was charged within the statutory period.

As the above-quoted language in *Devlin* indicates, the "reasonable certainty" requirement relates to the due process consideration and *not* to the standard which must be met in order to show that the offense was committed within the statutory period. The Commonwealth's burden regarding the statute of limitations remains proof beyond a reasonable doubt that the prosecution was timely commenced. *See Cardonick, supra.*

I further note my disagreement with the majority's statement that since appellant had the opportunity to refute the allegations of the victim, his rights were not compromised. See majority opinion at 564. A criminal defendant is never under an obligation to present evidence in his defense or to offer his own testimony. An incremental slippage from the constitutional standards applicable during a criminal proceeding can only serve to weaken the entire structure of our justice system. All society shares in the outrage against perpetrators of child abuse, but it is the obligation of the courts to observe equal concern for the constitutional

safeguards afforded those charged with criminal offenses. We may not shift the burden upon a criminal defendant to establish his innocence.

The Commonwealth has not carried its burden establishing that appellant has been afforded his due process rights. The failure of the evidence presented to fix the date, season, or even year of this incident requires a finding that appellant's constitutional right to due process has been violated. Although *Commonwealth v. Devlin, supra,* has been appropriately distinguished by our court in many cases, this case presents us with a factual scenario which calls for an application of the holding in *Devlin.*

Additionally, the Commonwealth fell far short of proving beyond a reasonable doubt that the single offense to which the complainant testified occurred within the statute of limitations period of two years. The testimony offered by the Commonwealth did not show a continuing course of conduct and did not reasonably fix the date of the offense as within the prescribed statutory period. As quoted above, the complainant, who was six years old at the time of trial and five years old at the time appellant was charged and arrested, testified regarding the age of her sister at the time of the incident. However, this testimony lacks sufficient specificity to bring the conduct within the statutory period. The prosecutor's question was phrased in terms of "about how old" the sister was and therefore calls for an answer only approximating the age. The single word answer, "One", is likewise vague and subject to various interpretations, e.g. the witness may have meant ten or eleven months or twenty-three months of age. The follow-up question regarding the sister's age at the time of trial, and the answer, "Three," does not fix the date of the offense as within the statute. As is evident from a complete review of the complainant's testimony, it is fraught with imprecisions, ambiguity, and gaps in memory, not unexpectedly given her young age and the subject matter of her testimony. However, the Commonwealth may not shirk its burden of complying with the statute of limitations by a vague accommo-

dation to a mathematical formula to fit within the number of years necessary to render the prosecution timely commenced.

Since complainant was asked *about how old* her sister was at the time of the incident, her answer of "One", assuming she meant one year, could be taken to mean the sister may have been as young as ten or eleven months old. Similarly, the answer "Three" regarding the sister's current age includes the time period from three years and one day to three years, eleven months and twenty-nine days. Assuming that the sister was three years and eleven months old on October 24, 1984, the date of trial, she would have been ten months old on September 24, 1981, a date outside the statute of limitations. This example merely points out the ambiguity inherent in the complainant's testimony regarding dating of the offense. This testimony standing alone is insufficient to bring the offense within the statutory period.

The Commonwealth should have secured alternate means of proof of the sister's age, since this was the only point upon which it pegged the date of the offense, rather than rely upon the fragile testimony of its six year old complaining witness. We are not insensitive to the problems associated with the child victim/witness and the adversarial process. The fixing of dates certain is not an ability one would expect from a six year old who is recounting a traumatic event of some time passed. However, it is the responsibility of the Commonwealth to realistically assess those elements of a crime, and any asserted defense, which may be proved through such a witness. If it is beyond the testimonial ability of the witness to supply such evidence, the Commonwealth may not avoid its duty by failing to supply other evidence. Where the issue is the date of birth of the victim's sister, the victim's testimony is not the only, nor is it necessarily the best, evidence of this fact. Philadelphia County does maintain an office from which birth records may be obtained.

I strongly disagree with the process of speculation engaged in by the majority regarding the possible reasons for the victim's mother's not offering testimony at trial. This is not a proper exercise for this court. There is not a single reference in the record from which a reason for the lack of testimony by the mother may be determined. Moreover, the implication that the mother is the only alternative source of the date of the younger daughter's birth is erroneous.

The statute of limitations remains the basic guarantee a criminal defendant has against stale prosecutions, and it is the duty of the court to liberally apply it in favor of the defendant. *See* discussion *supra*. The increased societal awareness of the nature and scope of abuse, sexual and otherwise, of children has caused the legislature to respond to the need to eliminate this abuse. There exists a mandatory sentencing provision for certain offenses against infant persons, 42 Pa.C.S.A. § 9718. Our statutory and decisional law provides for the use of videotaped depositions and closed-circuit television where a child victim or child material witness is involved in a prosecution. 42 Pa.C.S.A. § 5985(a); *Commonwealth v. Ludwig*, 366 Pa.Super. 361, 531 A.2d 459 (1987); *Commonwealth v. Lohman*, 370 Pa. Super. 404, 536 A.2d 809 (1988).[4]

In 1985, the statute of limitations was amended to provide a tolling period where the victim of a crime is under 18 years of age and the accused is a parent or parental figure. 42 Pa.C.S.A. § 5554. The existence of the amendment, however, does not apply to this case since the offenses occurred and appellant was charged prior to the effective date of the amendment.

Since I would find that appellant was not afforded either his constitutional right to due process or his statutory right

---

**4.** *But cf. Coy v. Iowa,* —— U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), in which the Supreme Court found violative of a defendant's right to face-to-face confrontation guaranteed by the Sixth Amendment a procedure where minor witnesses were separated from the defendant by a screen through which the defendant could see the witnesses but they could not see the defendant.

to be tried within the limitations period, I would reverse the judgment of sentence.

WIEAND and McEWEN, JJ., join.